UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

STEPHANIE ROACH,                    )      No. CV 08-6805-RC
                                    )
          Plaintiff,                )
                                    )      OPINION AND ORDER
     v.                             )
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
          Defendant.                )
_____    )

     Plaintiff Stephanie Roach filed a complaint on October 21, 2008,
seeking review of the Commissioner's decision denying her application
for disability benefits.  On May 18, 2009, the Commissioner answered
the complaint, and the parties filed a joint stipulation on May 29,
2009.


                          **BACKGROUND**

                              **I**

     On June 9, 2006, plaintiff applied for disability benefits under
the Supplemental Security Income ("SSI") program of Title XVI of the
Social Security Act ("Act"), 42 U.S.C. § 1382(a), claiming an

1  inability to work since January 1, 2003, due to depression and
2  constant pain.  Certified Administrative Record ("A.R.") 8, 111.  The
3  plaintiff's application was denied on December 28, 2006.  A.R. 40-44.
4  The plaintiff then requested an administrative hearing, which was held
5  before Administrative Law Judge Mary L. Everstine ("the ALJ") on
6  June 10, 2008.  A.R. 24-38, 47.  On July 25, 2008, the ALJ issued a
7  decision finding plaintiff is not disabled.  A.R. 5-13.  The plaintiff
8  appealed this decision to the Appeals Council, which denied review on
9  September 8, 2008.  A.R. 1-4.

10

11                                   II

12      The plaintiff, who was born on March 16, 1963, is currently 46
13  years old.  A.R. 26.  She is a high school graduate, has been trained
14  as a certified nurse's assistant and a medical assistant, and has
15  previously worked as a certified nursing assistant, waitress and
16  server.  A.R. 27, 83-90, 112, 115-16, 118-27.

17

18      On November 30, 2005, plaintiff was prescribed Elavil[1] at the SEP
19  Medical Clinic.  A.R. 159-60.  On July 6, 2006,[2] Afshin Akhavan, D.O.,
20  examined plaintiff, diagnosed her with depression and insomnia, and
21  prescribed Elavil.  A.R. 191.  On August 4, 2006, Dr. Akhavan opined
22  plaintiff was temporarily totally disabled through August 30, 2006,
23  due to her depression and other conditions.  A.R. 189.  Dr. Akhavan

---

[1]  Elavil "is prescribed for the relief of symptoms of mental depression."  The PDR Family Guide to Prescription Drugs, 240 (8th ed. 2000).

[2]  Although plaintiff has both mental and physical complaints, this opinion addresses only plaintiff's mental complaints.

2

1  reexamined plaintiff on August 7, 2006, and prescribed Zoloft[3] for

2  her.  A.R. 190, 239.  On October 26, 2006, Dr. Akhavan prescribed

3  Ambien[4] for plaintiff.  A.R. 238.

4

5      On November 18, 2006, Jason H. Yang, M.D., a psychiatrist,

6  examined plaintiff, diagnosed her with an unspecified depressive

7  disorder, and determined plaintiff's Global Assessment of Functioning

8  ("GAF") was 66.[5]  A.R. 193-96.  Dr. Yang found there was no evidence

9  of cognitive defects, perceptual disturbances or delusional disorders

10 on mental status examination, A.R. 196, and he opined:

11

12      [Plaintiff] is able to focus attention adequately.  She is

13      able to follow one and two part instructions.  [She] can

14      adequately remember and complete simple and complex tasks.

15      She is able to tolerate the stress inherent in the work

16      environment, maintain regular attendances, and work without

17      supervision.  In addition, she was able to interact

18      appropriately with myself and staff, and I imagine that she

19      would be able to interact appropriately with supervisors,

20

21      [3]  Zoloft "is prescribed for major depression — a
   persistently low mood that interferes with everyday living."  The
22 PDR Family Guide to Prescription Drugs at 763.

23      [4]  "Ambien is used for short-term treatment of insomnia.
   . . ."  The PDR Family Guide to Prescription Drugs at 30.
24
        [5]  A GAF of 66 indicates "[s]ome mild symptoms (e.g.,
25 depressed mood and mild insomnia) or some difficulty in social,
   occupational, or school functioning (e.g., occasional truancy, or
26 theft within the household), but generally functioning pretty
   well, has some meaningful interpersonal relationships."  American
27 Psychiatric Association, Diagnostic and Statistical Manual of
   Mental Disorders, 34 (4th ed. (Text Revision) 2000).
28

3

1    coworkers, and the public in the workplace.

2

3    Id.

4

5    On June 5, 2007, plaintiff was examined at the Los Angeles County

6    Department of Mental Health's Kedren Community Mental Health Center

7    ("DMH"),[6] diagnosed as having a major depressive disorder with

8    psychotic features, and her GAF was determined to be 47.[7]  A.R. 224-

9    28.  Upon mental status examination, it was found plaintiff's remote

10   memory was impaired; she was dysphoric, anxious, isolated and

11   withdrawn; had a sad affect and excessive crying; she had paranoid

12   delusions and visual hallucinations; and her judgment was moderately

13   impaired, her insight was minimally impaired, and she exhibited

14   antisocial behavior.  A.R. 227.  The plaintiff received mental health

15   treatment at this facility, including individual therapy and

16   psychiatric medication, until September 14, 2007.  A.R. 229, 240-46.

17

18                              **DISCUSSION**

19                                  **III**

20   The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

21   _____

22       [6]  Plaintiff was initially seen on June 5, 2007, by Tamineca
     Lollis, a social worker, A.R. 224-28, and on June 12, 2007, Ms.
23   Lollis's evaluation was co-signed by another person, presumably a
     clinician, but the signature is illegible.  A.R. 228.
24

25       [7]  A GAF of 47 means "[s]erious symptoms (e.g., suicidal
     ideation, severe obsessional rituals, frequent shoplifting) or
26   any serious impairment in social, occupational, or school
     functioning (e.g. no friends, unable to keep a job)."  American
27   Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental
     Disorders, 34 (4th ed. (Text Revision) 2000).
28

1  review the Commissioner's decision denying plaintiff disability

2  benefits to determine if his findings are supported by substantial

3  evidence and whether the Commissioner used the proper legal standards

4  in reaching his decision.  Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th

5  Cir. 2009); Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).

6

7       The claimant is "disabled" for the purpose of receiving benefits

8  under the Act if she is unable to engage in any substantial gainful

9  activity due to an impairment which has lasted, or is expected to

10  last, for a continuous period of at least twelve months.  42 U.S.C.

11  § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the

12  burden of establishing a prima facie case of disability."  Roberts v.

13  Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

14  (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

15

16       The Commissioner has promulgated regulations establishing a five-

17  step sequential evaluation process for the ALJ to follow in a

18  disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ

19  must determine whether the claimant is currently engaged in

20  substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the

21  **Second Step**, the ALJ must determine whether the claimant has a severe

22  impairment or combination of impairments significantly limiting her

23  from performing basic work activities.  20 C.F.R. § 416.920(c).  If

24  so, in the **Third Step**, the ALJ must determine whether the claimant has

25  an impairment or combination of impairments that meets or equals the

26  requirements of the Listing of Impairments ("Listing"), 20 C.F.R.

27  § 404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the

28  **Fourth Step**, the ALJ must determine whether the claimant has

sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. § 416.920(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 416.920(g).

Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.  Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 C.F.R. § 416.920a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. § 416.920a(c)(2-4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. § 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing.  20 C.F.R. § 416.920a(d)(2).  Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).

1    Applying the five-step sequential evaluation process, the ALJ
2    found plaintiff has not engaged in substantial gainful activity since
3    the application date, June 9, 2006.  (Step One).  The ALJ then found
4    plaintiff does not have a severe impairment or combination of
5    impairments; therefore, she is not disabled.  (Step Two).

6

7                                  **IV**

8         The Step Two inquiry is "a de minimis screening device to dispose
9    of groundless claims."  Smolen, 80 F.3d at 1290; Webb v. Barnhart,
10   433 F.3d 683, 687 (9th Cir. 2005).  Including a severity requirement
11   at Step Two of the sequential evaluation process "increases the
12   efficiency and reliability of the evaluation process by identifying at
13   an early stage those claimants whose medical impairments are so slight
14   that it is unlikely they would be found to be disabled even if their
15   age, education, and experience were taken into account."  Bowen v.
16   Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119
17   (1987).  However, an overly stringent application of the severity
18   requirement violates the Social Security Act by denying benefits to
19   claimants who do meet the statutory definition of disabled.  Corrao v.
20   Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

21

22        A severe impairment or combination of impairments within the
23   meaning of Step Two exists when there is more than a minimal effect on
24   an individual's ability to do basic work activities.  Webb, 433 F.3d
25   at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see
26   also 20 C.F.R. § 416.921(a) ("An impairment or combination of
27   impairments is not severe if it does not significantly limit [a
28   person's] physical or mental ability to do basic work activities.").

                                    7

Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b); Webb, 433 F.3d at 686.  If the claimant meets her burden of demonstrating she suffers from an impairment affecting her ability to perform basic work activities, "the ALJ *must* find that the impairment is 'severe' and move to the next step in the SSA's five-step process." Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001) (emphasis in original); Webb, 433 F.3d at 686.

Plaintiff contends the ALJ failed to properly consider the DMH medical records in making the Step Two determination that she does not have a severe mental impairment.  The plaintiff is correct.

The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Spraque v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).  Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, Ryan v. Comm'r of the Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998), and "[e]ven if [a] treating doctor's opinion is contradicted by another

1  doctor, the ALJ may not reject this opinion without providing

2  'specific and legitimate reasons' supported by substantial evidence in

3  the record." Reddick, 157 F.3d at 725; Tommasetti v. Astrue,

4  533 F.3d 1035, 1041 (9th Cir. 2008).

5

6      Here, the ALJ discounted plaintiff's mental health records,[8]

7  concluding "the record documents mental health treatment for only a

8  few months." A.R. 10, 12.  However, this is not accurate.  Although

9  plaintiff appears to have been treated at DMH for only four months or

10 so between June and September 2007, she was prescribed Elavil as early

11 as November 30, 2005, A.R. 160, and again in July 2006, when her

12 treating physician, Dr. Akhavan, prescribed both Elavil and Zoloft for

13 plaintiff.  A.R. 189-92, 230-39.  Further, the ALJ failed to address

14 DMH's June 5, 2007 determination that plaintiff's GAF was 47.  As

15 previously noted, a GAF score of 47 indicates "[s]erious symptoms" or

16 "any serious impairment in social, occupational, or school

17 functioning. . . ."  Although an ALJ need not discuss a GAF score in

18 all instances, Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th

19 Cir. 2002), the ALJ must do so when, as here, he has not provided any

20

21     [8]  For purpose of this opinion only, the Court considers all
   the DMH records to constitute medical records from a treating
22 source.  See, e.g., Benton v. Barnhart, 331 F.3d 1030, 1035-40
   (9th Cir. 2003).  Since the supervisor's signature on the initial
23 DMH assessment is illegible, A.R. 228, it is unclear if that
   person is a psychiatrist or a psychologist, and this needs
24 clarification on remand in order to determine what weight to give
   the DMH records.  See Benton, 331 F.3d at 1039 ("If the ALJ was
25 not sure as to Dr. Zwiefach's background, he had the opportunity
   and duty to develop the record."); Tonapetyan v. Halter,
26 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the
   ALJ's own finding that the record is inadequate to allow for
27 proper evaluation of the evidence, triggers the ALJ's duty to
   'conduct an appropriate inquiry.'" (citations omitted)).
28

rationale for otherwise rejecting a treating physician's opinion of a claimant's overall mental functioning, and such opinion - as expressed in a GAF score - clearly contradicts the ALJ's finding regarding the claimant's mental functioning.  See, e.g., McCloud v. Barnhart, 166 Fed. Appx. 410, 418 (11th Cir. 2006) (per curiam) (Unpublished) ("We are unable to determine from the record what weight the ALJ placed on the GAF score of 45; therefore, we reject the Commissioner's argument that any error was harmless.  With the knowledge that a GAF score of 45 reflects severe impairments, the ALJ should determine what, if any, weight to place on the score."); Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. 2004) (Unpublished) ("A GAF score of 50 or less . . . does suggest an inability to keep a job.  In a case like this one, decided at step two, the GAF score should not have been ignored." (citation omitted)); Bennett v. Barnhart, 264 F. Supp. 2d 238, 255 (W.D. Pa. 2003) (Contrary to ALJ's Step Two determination, "a GAF score of 55 to 60 suggests . . . a mental impairment that is 'severe' in nature."); Rodriquez v. Astrue, 2009 WL 1586529, *2 (C.D. Cal.) ("[T]he ALJ erred in his Step Two determination by failing to properly consider the treating clinician's . . . opinion that [the claimant] suffered from a severe mental impairment, as evidenced by the clinician's rating of [the claimant's GAF] at 50.").

For these reasons, the ALJ's Step Two determinations that plaintiff does not have a severe mental impairment, and is not disabled, are not supported by substantial evidence.

//

//

**V**

When the ALJ's decision is not supported by substantial evidence, the Court has the authority to affirm, modify, or reverse the decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g); <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002). Generally, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004); <u>Moisa v. Barnhart</u>, 367 F.3d 882, 886 (9th Cir. 2004).  Here, remand is appropriate so the ALJ can properly assess the medical evidence and determine whether plaintiff has a severe mental impairment and is disabled.[9] <u>Webb</u>, 433 F.3d at 688; <u>Edlund</u>, 253 F.3d at 1160.


**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is granted; and (2) the Commissioner's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion and Order, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.


DATE:  August 5, 2009          /S/ ROSALYN M. CHAPMAN
                               ROSALYN M. CHAPMAN
                               UNITED STATES MAGISTRATE JUDGE

---

[9]  Having reached this conclusion, it is unnecessary to reach the other arguments plaintiff raises, none of which will provide plaintiff any further relief than herein granted.

R&R-MDO\08-6805.mdo
8/5/09